[No. S032885. Apr. 25, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL NEIL MACHUPA, Defendant and Appellant.

**COUNSEL**

Kieran D. C. Manjarrez, under appointment by the Supreme Court, for Defendant and Appellant.

John T. Phillipsborn, Lewis A. Wenzell, James McWilliams and Barbara B. Fargo as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Thomas A. Brady, Stan M. Helfman and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARABIAN, J.**—We granted review to decide whether the so-called "good faith" exception to the exclusionary rule announced in *United States* v. *Leon*

(1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] (hereafter *Leon*) applies to a warrantless and nonconsensual entry into a residence by police officers and the seizure of evidence that forms the basis for the subsequent issuance of a search warrant. In the metonymic language of Fourth Amendment jurisprudence, the question before us might be phrased as the extent to which the "good faith" exception extends to the "fruit of the poisonous tree" doctrine.

In *Leon, supra*, 468 U.S. 897, the high court modified the exclusionary rule "so as *not* to bar [subject to four exceptions] the use . . . of evidence obtained by officers acting in reasonable reliance on a search *warrant issued by a* detached and neutral *magistrate* but ultimately found to be unsupported by probable cause." (*Id.* at p. 900 [82 L.Ed.2d at p. 684], italics added.) As will appear, our Court of Appeal—in line with the great majority of the federal circuit courts—has uniformly declined to cure the taint of warrantless searches and seizures by applying the *Leon* exception to the magistrate's *subsequent* issuance of a warrant, a result we approve. We thus agree with the conclusion of the Court of Appeal that the "good faith" exception of *Leon, supra*, 468 U.S. 897, does not validate the search at issue here, and affirm the judgment of that court, although for reasons substantially different from those relied on by the Court of Appeal.

I

A

On the afternoon of October 22, 1990, Deputy Frank Battles and Sergeant Dale Morrison of the Contra Costa County Sheriff's Office were directed to investigate a reported shooting in the 5600 block of San Pablo Dam Road in El Sobrante. The officers drove separately to that location, where they found a man with a gunshot wound sitting on the sidewalk at 5591 San Pablo Dam Road. Witnesses at the scene told the officers that the driver of a white Cadillac parked in a common driveway shared by several houses in the 5600 block had argued with the victim around the time of the shooting and had then driven off. The officers found a trail of blood leading from the wounded man to the common driveway.

As part of his investigation of the shooting, Battles began canvassing the houses sharing the driveway. Defendant answered the door to the house at number 5611; Battles identified himself and his purpose. Defendant said that he had been sleeping and had heard nothing; he did not recognize the name of the shooting victim. Battles returned to the shooting victim where he was joined by Sergeant Morrison.

Shortly afterward, defendant approached the officers, who were still at the scene of the shooting. Battles mentioned that two .32-caliber shell casings had been found at the site and asked defendant if he had any weapons. Defendant replied that he owned two guns and that neither was a .32-caliber. The officers asked to see the guns; defendant replied that he would get them from his house. As Deputy Battles later related in his testimony at the preliminary hearing, because the officers were investigating a shooting, Sergeant Morrison told defendant "to hang on a second and explained to him that since we were dealing with a shooting, we really didn't trust him to go inside and bring the gun back out by himself. And that we wished to accompany him into the residence while he picked up the gun for our own safety."

According to Battles, defendant responded, "I guess," and entered the house, followed by the two officers. Inside, defendant retrieved a .45-caliber Colt handgun and a shotgun from the bedroom and handed the weapons to the officers. While standing in defendant's bedroom, Battles saw on the bedside table a small plastic bag containing what appeared to be marijuana. Battles asked defendant for permission to look through the rest of the house to ensure that no one else was present. Defendant agreed. Morrison entered an adjacent room and saw within a substantial quantity of marijuana in plain view. The officers then arrested defendant and secured the house by posting a uniformed officer inside.

That evening, Detective Robert Hansen of the Contra Costa County Sheriff's Office applied to a magistrate for a warrant to search defendant's house for marijuana and other evidence of drugs. His affidavit in support of the warrant application summarized the facts of the shooting investigation and the discovery of the marijuana in defendant's house as related to him by Battles and Morrison over the telephone. Because it is a key element in the government's claim that the "good faith"[1] exception to the exclusionary rule applies here to validate Detective Hansen's subsequent warranted search of defendant's residence and the seizure of evidence therein, we summarize the contents of his five-page, handwritten affidavit.

As recited on the first page of Hansen's affidavit, Sergeant "Morrison said he was *invited* into [defendant's] residence along with Battles as [defendant]

---

[1] We reluctantly use the term "good faith" to describe the exception formulated by the high court in *Leon, supra,* 468 U.S. 897. Although many courts and commentators routinely describe the *Leon* decision as establishing a "good faith" rule, the *Leon* exception itself focuses expressly and exclusively on the *objective reasonableness* of an officer's conduct, not on his or her subjective "good faith" (or "bad faith"). Although we attempt to underline the distinction by speaking of the requirement that an officer's reliance be "objectively reasonable" in order to invoke the *Leon* exception, we descend on occasion to the shorthand (and misleading) phrase that has entered the law's language and speak loosely of the "good faith" exception.

agreed to retrieve his two guns." (Italics added.) After describing seeing the baggie of marijuana in plain view in defendant's bedroom and a greater quantity in the study, Hansen's affidavit provided a more detailed account of the circumstances leading up to the entry into the house, including the following: "In the course of questioning [defendant,] Battles asked 'Do you have any weapons. When [defendant] replied 'Yes, two,' Battles asked, 'May we see them.' [Defendant] replied, 'I'll get them.' Battles then said to [defendant] that he and Morrison *would have to go with him.* Battles said he and Morrison followed [defendant] into the house without any protest from [defendant]." (Italics added.) Hanson's affidavit closed with an account of the postarrest procedures the officers followed and of Battles's police training and experience.

A magistrate issued the requested search warrant that evening and Hanson executed it that night. His search of defendant's residence turned up additional quantities of marijuana and other evidence of drug possession, on the strength of which defendant was charged with possession of marijuana for sale (Health & Saf. Code, § 11359) and possession of cocaine while armed with a firearm (Health & Saf. Code, § 11350; Pen. Code, § 12022, subd. (a)).

B

At the preliminary hearing, defendant moved to suppress the evidence seized under the search warrant on the ground that the initial entry by Deputy Battles and Sergeant Morrison was made without his consent and that the evidence seized in the subsequent warranted search was tainted because it was the product of the original unconsented entry. As relevant here, in support of his suppression motion, defendant claimed that as he walked back to his house to retrieve his two guns, "the deputies followed me. They were standing behind me on the porch when I opened the door. As soon as I walked in they followed me in and said something to the effect of, 'We can't let you go in there alone, there might be another body or another person in here.' . . . I did not invite the deputies into my home. Neither deputy asked if they could come in my home. I never gave the deputies permission to enter my home."

After hearing testimony and argument on the suppression motion, the municipal court judge found that "there has been a discrepancy in testimony as . . . to what exactly took place. . . . [T]he defendant [went] . . . up to the officers and the officers apparently asked him if he had any weapons. . . . And that's when we get back to the house. We have some conflict as to what exactly took place. In the best scenario from [the prosecution's] standpoint, . . . it was that he opened the door with the officers right there

and walked in. And they walked in after him with the understanding apparently there was implied consent. I'm going in. We're all going in. It's understood we're all going in. That of course is contradicted by . . . the declaration of the defendant which was not controverted, or he says it somewhat differently. So, what I'm left with is whether or not that conduct, if believed, is sufficient to warrant implied consent. . . . So, the court finds that the consent wasn't any good."

The magistrate then turned to the prosecution's claim that the exception announced in *Leon, supra,* 468 U.S. 897, applied to validate the search under the warrant. He thought that "this is the type of case *Leon* was contemplating. I think the officers understood the theory on which they were trying to go in. They were trying to go in on a consent search. They put information into an affidavit [which], if believed, would have been a consent search. Looking at it now having heard the testimony of the officers, the declaration from [defendant], this court's ruling now finds that it was insufficient. But I cannot say that the officers were in any way acting in bad faith. . . . [T]here is clearly sufficient information in the affidavit if believed that would have allowed this magistrate to find that there was no material misrepresentation. So, the court upholds the warrant under the *Leon* doctrine." The superior court subsequently denied a renewed motion to suppress the evidence.

## II

### A

The Court of Appeal reversed, with directions to grant defendant's motion to suppress. It reasoned that the affidavit of Detective Hansen submitted to the magistrate in support of the warrant application was internally contradictory and that Hansen, an officer with over 10 years' experience at the time he applied for the warrant, should have known it to be so. The statement in Hansen's affidavit, attributed to Sergeant Morrison, that defendant "invited" the officers into his house, the Court of Appeal wrote, "is a conclusionary statement unsupported by observable fact, contained in an affidavit prepared by an officer who was not present, and contradicted by a statement attributed to the other officer present [i.e., Battles's statement that the officers would have to go with him]. . . . Hansen . . . would be expected to know that absent exigent circumstances officers may not enter a residence without a warrant unless they have the resident's consent, and that the consent must be free, voluntary and unequivocal, and not a mere acquiescence to a claim of legal authority." The Court of Appeal concluded that Hansen's failure to "clarify" for the magistrate the ambiguity inherent in the affidavit "*precludes* the police from entertaining a *good faith belief* that the warrant was properly issued." (Italics added.)

Underlying its conclusion that *Leon, supra,* 468 U.S. 897, did not apply because Detective Hansen's affidavit failed to establish his good faith is the assumption, not squarely examined by the Court of Appeal, that the exception to the exclusionary rule formulated in *Leon* applies to seizures, like that by Detective Hansen here, made under a warrant issued on the basis of the observation of contraband in the course of an antecedent *warrantless entry.* The Court of Appeal came close to broaching that issue when it stated that it had "no quarrel" with the proposition that "if the police reasonably believed they had consent to enter [defendant's] residence, their subsequent reliance on the warrant satisfies the *Leon* good faith test, regardless of the lack of actual consent." We granted review to consider the validity of that proposition.

B

The Court of Appeal relied on our opinion in *People* v. *Camarella* (1991) 54 Cal.3d 592 [286 Cal.Rptr. 780, 818 P.2d 63] as supporting the proposition that the *Leon* exception applied to validate a search and seizure by police officers who reasonably believed they had consent to enter defendant's residence *and subsequently* obtained a warrant based on the contraband observed in the antecedent warrantless search. In *Camarella,* a police officer received a telephone tip from an anonymous caller that the defendant was selling cocaine. After further investigation, including checking police files and contacts with another untested informant, he drew up an affidavit in support of a warrant, had it reviewed by a deputy district attorney, and applied to a magistrate, who authorized the requested search. In subsequent criminal proceedings, both the trial court and the Court of Appeal held that the magistrate had erred and that probable cause was lacking, given the absence of any effort to confirm the reliability of the telephonic informant and the staleness of the corroborating information. The Court of Appeal, however, upheld the search under the defective warrant, stating that the matter was " 'a pure *Leon* case.' " (*Id.* at p. 600.)

Thus, in granting review of the Court of Appeal's decision, the question before us in *Camarella, supra,* 54 Cal.3d 592, was not whether the exception to the exclusionary rule announced in *Leon, supra,* 468 U.S. 897, validated a search under a warrant issued on the basis of a prior *warrantless* entry by police officers acting in "good faith." It was the distinctly different question of the circumstances under which one of the four exceptions to the *Leon* exception itself (an exception to the exception of nonexclusion, as it were), applied to a search conducted *pursuant to a warrant* that was regular on its face. Because *Camarella* did not involve a *search antecedent* to a warrant, our reasoning in that case throws little light on the question we consider

here, namely, whether the *Leon* exception extends to a warrantless, nonconsensual search that forms the basis for a *subsequent* warrant application.

The distinction is an important one in the evolution of Fourth Amendment jurisprudence. For although the good faith exception formulated by the high court in *Leon, supra,* 468 U.S. at page 900 [82 L.Ed.2d at page 684], undoubtedly validates a police officer's "[objectively] reasonable reliance" on a *warrant previously issued* by a magistrate and *later* determined to be based on less than probable cause, the indications are far less clear that the high court intended the exception it announced in *Leon* to swallow the cognate and longstanding doctrine that "[t]he essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court *but that it shall not be used at all.*" (*Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385, 392 [64 L.Ed. 319, 321, 40 S.Ct. 182, 24 A.L.R. 1426], italics added; see also *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407] ["fruit of the poisonous tree"]; *Weeks* v. *United States* (1914) 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341]; *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; cf. *United States* v. *Karo* (1984) 468 U.S. 705 [82 L.Ed.2d 530, 104 S.Ct. 3296], *Segura* v. *United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599, 104 S.Ct. 3380]; *Murray* v. *United States* (1988) 487 U.S. 533 [101 L.Ed.2d 472, 108 S.Ct. 2529] [reaffirming vitality of *Silverthorne*].)

In *Leon, supra,* 468 U.S. 897, narcotics officers, acting on a tip from "a confidential informant of unproven reliability" that defendants were selling large quantities of drugs at their residence, began an extensive investigation, including staking out several locations. (*Id.* at p. 901 [82 L.Ed.2d at p. 684].) On the basis of the tip and observations gathered during the stakeouts, the officers applied to a state court judge for a search warrant. A "facially valid search warrant" issued and the ensuing search produced substantial quantities of illegal drugs. (*Id.* at p. 902 [82 L.Ed.2d at p. 685].) Following their indictment on federal drug charges, defendants moved to suppress the evidence seized under the warrant. Finding the affidavit underlying the warrant insufficient to establish probable cause, given the nature of the informant and the staleness of other information, the district court ordered the evidence suppressed.

The high court granted the government's petition for certiorari and reversed. "[T]he Fourth Amendment exclusionary rule should be modified," it held, "so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported

by probable cause." (*Leon, supra*, 468 U.S. at p. 900 [82 L.Ed.2d at p. 684].) The core rationale supporting a "good faith" exception was the court's perception that "the exclusionary rule is designed to deter *police* misconduct rather than to punish the errors of judges and magistrates." (*Id.* at p. 916 [82 L.Ed.2d at p. 694], italics added.) It follows, the majority opinion reasoned, that "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (*Id.* at pp. 920-921 [82 Cal.Rptr. at p. 697], fns. omitted.)[2]

The so-called "good faith" exception of *Leon, supra*, 468 U.S. 897, thus embodies the proposition that, as the court later summarized its holding, "the exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was objectively reasonable, even though the warrant was ultimately found to be defective." (*Illinois v. Krull* (1987) 480 U.S. 340, 348 [94 L.Ed.2d 364, 374, 107 S.Ct. 1160] [extending *Leon* rationale to warrantless search of auto wrecking yard under administrative search statute subsequently declared unconstitutional].)

### III

### A

Although we have not previously confronted the issue, in the 10 years since *Leon, supra*, 468 U.S. 897, was decided, the Court of Appeal has

---

[2]Nonexclusion is not always appropriate, however, even where "an officer has obtained a warrant and abided by its terms. . . . [The] officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable [citation], and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." (*Leon, supra*, 468 U.S. at pp. 922-923 [82 L.Ed.2d at p. 698], fns. omitted.) Among these circumstances, the high court identified four cases—where the magistrate "was misled by information in an affidavit that the affiant knew [or should have known] was false," where the magistrate "wholly abandoned his judicial role," where the affidavit is " 'so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable,' " and where the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." (*Id.* at p. 923 [82 L.Ed.2d at p. 699].) As noted, our opinion in *Camarella, supra*, 54 Cal.3d at page 596, "concern[ed] application of the third of these situations."

repeatedly rejected claims that the good faith exception validates searches and seizures under a warrant issued on the basis of an antecedent warrantless search.

In *People* v. *Leichty* (1988) 205 Cal.App.3d 914 [252 Cal.Rptr. 669], for example, narcotics officers were called to an airport by a clerk who noticed a strong odor emanating from a package left by defendant for air shipment. After conducting an inconclusive field test, the officers took the package to a police laboratory where it was opened and extensive chemical tests performed on its contents, several used soda bottles filled with a yellow liquid. The tests were positive for methamphetamine. On the strength of the laboratory test results, a warrant was obtained and drugs were seized during a search of defendant's home.

The Court of Appeal ordered the evidence seized in the search of defendant's home suppressed. The good faith exception to the exclusionary rule recognized in *Leon*, *supra*, 468 U.S. 897, the Court of Appeal reasoned, rested on the proposition that " '[i]f exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, . . . it must alter the behavior of individual law enforcement officers or the policies of their departments.' . . . [¶] . . . Here, unlike in *Leon*, the law enforcement officers obtained the search warrant through exploitation of their primary illegal behavior in conducting laboratory tests on the contents of the . . . bottles. Thus, imposition of the exclusionary rule will work to deter this illegal behavior, rather than punish a judicial or magisterial error." (*Leichty*, *supra*, 205 Cal.App.3d at p. 925.)

In *People* v. *Brown* (1989) 210 Cal.App.3d 849 [260 Cal.Rptr. 293], a police officer opened the door to a bedroom defendant had sublet from an apartment tenant and observed evidence of crack cocaine. He then entered and searched the room, seizing drugs and related paraphernalia on the basis of which the officer obtained a warrant for a more extensive search of defendant's bedroom. The Court of Appeal again declined to uphold the subsequent warranted entry and search under *Leon*, *supra*, 468 U.S. 897: "Since the officer here erred in entering defendant's room and used evidence seized at that time as a basis for the search warrant, the evidence obtained pursuant to the search warrant must likewise be suppressed." (*Brown*, *supra*, 210 Cal.App.3d at p. 857.)

In *People* v. *Ivey* (1991) 228 Cal.App.3d 1423 [279 Cal.Rptr. 554], police officers detained defendant on the basis of an outstanding arrest warrant that, unknown to them, had been recalled. Cocaine was discovered in the course of a booking search. The Court of Appeal held that the officers could not

rely on the good faith exception of *Leon, supra,* 468 U.S. 897, to validate their search of defendant. *"United States* v. *Leon* is distinguishable," the court wrote. "Here, the error was the official transmission of misinformation by the police. . . . Thus, the arrest was the direct result of the collective negligence of the police department, rather than an erroneous legal determination by a neutral magistrate." (*Ivey, supra,* 228 Cal.App.3d at p. 1426.)

In *People* v. *Ingham* (1992) 5 Cal.App.4th 326 [6 Cal.Rptr.2d 756], officers arrested a suspect at her home and took her handbag to the booking station where they searched it without a warrant, finding narcotics. A warrant issued on the basis of that discovery, the suspect's house was searched, and additional narcotics were seized. Although it was not unreasonable for the officers to seize the handbag, the Court of Appeal held, the search at the stationhouse required a warrant. Moreover, the subsequent, warranted search of defendant's house was not saved by *Leon, supra,* 468 U.S. 897, since "the good faith exception is inapplicable where, as here, the search warrant is based on illegally seized evidence. [Citation.] The constitutional error in such a case is made by the police officer, not by the magistrate as was the case in *Leon.*" (*Ingham, supra,* 5 Cal.App.4th at pp. 333-334; see also *Miranda* v. *Superior Court* (1993) 13 Cal.App.4th 1628, 1633 [16 Cal.Rptr.2d 858] [warrantless search of defendant's house on basis of erroneous police department computer printout not validated by *Leon* because "the *Leon* court did not purport to create a broad or general rule of admissibility of evidence collected in erroneous but good faith reliance on some supposed ground of search."].)

B

 ██ ██ In their emphasis on the core rationale of *Leon, supra,* 468 U.S. 897—that is, that the exclusionary rule should apply where it will "deter *police* misconduct rather than . . . punish the errors of judges and magistrates" (*id.* at p. 916 [82 L.Ed.2d at p. 694], italics added)—these Court of Appeal decisions parallel, and in several instances explicitly rely on, the opinion of the United States Court of Appeals for the Ninth Circuit in *United States* v. *Vasey* (9th Cir. 1987) 834 F.2d 782 (hereafter *Vasey*).[3] There, state police officers stopped defendant's car for speeding. After a computer check showed an outstanding arrest warrant for drug possession, defendant was removed from his automobile, handcuffed, and placed in the rear of a police cruiser; a patdown search disclosed $1,100.00 in cash. The officers returned to the suspect's car and were able to see a pill bottle through the window. After deciding to impound the automobile, they entered it and conducted an

---

[3]"By virtue of California Constitution, article I, section 28, subdivision (d), the issue [i.e., the reach of the exclusionary rule] is purely one of federal constitutional law. (See *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)" (*People* v. *Camarella, supra,* 54 Cal.3d at p. 596.)

inventory search some 30 to 45 minutes after defendant had been handcuffed and placed in the cruiser. Additional currency and narcotics were discovered; on that basis, the officers applied for and obtained a warrant to conduct a more extensive search. That search disclosed over $70,000 in cash and three kilograms of cocaine concealed in the automobile.

After concluding that the scope of the vehicle search exceeded that authorized by *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], and *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860], the Ninth Circuit turned to the claim that the good faith exception of *Leon, supra,* 468 U.S. 897, validated the search of defendant's automobile under the warrant. "The fact that [the police] conducted a [prior] warrantless search of the vehicle which violated [defendant's] Fourth Amendment rights precludes any reliance on the good faith exception," the Ninth Circuit concluded. (*Vasey, supra,* 834 F.2d at p. 789.) "The constitutional error was made by the officer in this case, not by the magistrate as in *Leon.* The *Leon* Court made it very clear that the exclusionary rule should apply . . . if the exclusion of evidence would alter the behavior of individual law enforcement officers or the policies of their department. [Citations.]" (*Ibid.*)

The court then considered the government's argument that because a *magistrate* had reviewed the officer's actions in conducting a warrantless inventory search of the automobile *before* issuing a warrant, the prior illegal search of the automobile had been "sanitized": "A magistrate's role when presented with evidence to support a search warrant is to weigh the evidence to determine whether it gives rise to probable cause. A magistrate evaluating a warrant application based in part on evidence seized in a warrantless search is simply not in a position to evaluate the legality of that search. Typically, warrant applications are requested and authorized under severe time constraints. Moreover, warrant applications are considered without the benefit of an adversarial hearing in which the evidentiary basis of the application might be challenged. Although we encourage magistrates to make all possible attempts to ensure that a warrantless search was legal before relying on the fruits of that search, we are mindful of the limitations on a magistrate's fact-finding ability in this context. We therefore conclude that *a magistrate's consideration does not protect from exclusion evidence seized during a search under a warrant if that warrant was based on evidence seized in an unconstitutional search.*" (*Vasey, supra,* 834 F.2d at pp. 789-790, italics added and fn. omitted.)

Several federal appellate courts have adopted reasoning similar to *Vasey, supra,* 834 F.2d 782, holding in effect that, in the words of a state high court, "[p]olice officers cannot launder their prior unconstitutional behavior by

presenting the fruits of it to a magistrate." (*State* v. *Hicks* (1986) 146 Ariz. 533 [707 P.2d 331, 333], affd. on other grounds *sub nom. Arizona* v. *Hicks* (1987) 480 U.S. 321 [94 L.Ed.2d 347, 107 S.Ct. 1149]. In a series of cases, the Ninth Circuit has reaffirmed the position taken in *Vasey*. (See *United States* v. *Warner* (9th Cir. 1987) 843 F.2d 401, 405 [The "touchstone [of *Leon*] was the . . . officer's objectively reasonable reliance on the determination of a magistrate . . . that the challenged search in fact met the standards required by the fourth amendment"]; *United States* v. *Winsor* (9th Cir. 1988) 846 F.2d 1569, 1579 (in bank) [declining to extend *Leon*'s "good faith exception to searches not conducted in reliance on a warrant . . . ."]; and *United States* v. *Wanless* (9th Cir. 1989) 882 F.2d 1459; see also *United States* v. *Merchant* (9th Cir. 1985) 760 F.2d 963, 968, fn. 6 [noting that other courts have "rejected extension of the good faith rule to warrantless searches"]; *United States* v. *Whiting* (9th Cir. 1986) 781 F.2d 692, 698 [rejecting government claim that *Leon* created a broad good faith exception extending beyond the warrant context]; cf. *United States* v. *Miller* (9th Cir. 1987) 822 F.2d 828; and *United States* v. *Luk* (9th Cir. 1988) 859 F.2d 667, 674.)

In addition to the Ninth Circuit, the First, Sixth and Tenth Circuits have also concluded that the exception to the exclusionary rule announced in *Leon, supra*, 468 U.S. 897, applies only where law enforcement officers act in objectively reasonable reliance on a *previously* issued search warrant. (See *United States* v. *Curzi* (1st Cir. 1989) 867 F.2d 36, 44 ["[T]his court has not recognized a good-faith exception with respect to warrantless searches. . . . [¶] It makes eminently good sense . . . to employ the rule precisely as it has been formulated by the Court: 'a good-faith exception to searches conducted pursuant to warrants.' [Citation.] This is particularly so when one considers the Court's concern that '[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.' "]; *United States* v. *Morgan* (6th Cir. 1984) 743 F.2d 1158, 1165 [*Leon* does not apply where the officers did not have a warrant to enter defendant's home and were not in the process of applying for one]; *United States* v. *Scales* (10th Cir. 1990) 903 F.2d 765, 768 ["The specific holding of *Leon* does not apply to the facts of this case, nor is the rationale behind it present here . . . . The 'illegality' which arguably existed here was not a function of the agents' good faith reliance on a presumptively valid warrant."]; cf. *United States* v. *Milian-Rodriguez* (11th Cir. 1985) 759 F.2d 1558, 1563, fn. 2; *United States* v. *Villard* (D.N.J. 1988) 678 F.Supp. 483.)[4]

In declining to validate warrantless searches on the basis of the post hoc issuance of a warrant, these Court of Appeal and federal circuit decisions

---

[4]We note that in several of these federal circuit decisions, the police officers never obtained a search warrant *at all*; these cases thus differ in that important respect from the facts in *Vasey, supra*, 843 F.2d 834, and in this case.

uniformly rely on the explicit rationale supporting the high court's ruling in *Leon, supra,* 468 U.S. 897. As noted, the *Leon* exception is rooted in the perception that, because the exclusionary rule is designed to deter misconduct by the *police,* the justification for refusing to admit probative evidence of guilt as well as the "substantial social costs exacted by the exclusionary rule" (*id.* at p. 907 [82 L.Ed.2d at p. 688]) is not present in cases where the *magistrate,* rather than the constable, has blundered. Because the exclusionary rule will not deter the "objectively reasonable" conduct of a police search made in reliance on a warrant previously issued by a neutral and detached magistrate, it should not be applied in such cases.

That rationale is absent, however, where the initial Fourth Amendment violation is the product of police rather than magisterial conduct. As the Ninth Circuit pointed out in *Vasey, supra,* 834 F.2d 782, "conducting an illegal warrantless search and including evidence found in this search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter." (*Id.* at p. 789.) Moreover, because "the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search" (*Murray* v. *United States, supra,* 487 U.S. at pp. 536-537 [101 L.Ed.2d at p. 480]), the rule logically ought to bar the use of such evidence to support the issuance of a search warrant.

IV

Despite this substantial precedent supporting the view that the good faith exception of *Leon, supra,* 468 U.S. 897, does not apply to warrantless searches, there is an alternative (albeit minority) view. The leading expositor of the notion that the logic of the *Leon* rationale justifies its application to a warrantless search context under circumscribed conditions is the Second Circuit. In *United States* v. *Thomas* (2d Cir. 1984) 757 F.2d 1359, narcotics officers used a trained police dog to sniff outside the window of a suspect's house; the dog "alerted" to the presence of drugs within the house. On the basis of that reaction and additional information, the officers applied for a warrant to search the house, including in their affidavit a description of the dog's behavior and the surrounding circumstances. The magistrate found probable cause and issued a search warrant.

Although the Second Circuit found that the canine sniff of the outside of defendant's house was a "search" that in the absence of a warrant violated the Fourth Amendment, and that the additional information supporting the

warrant application did not establish probable cause, it upheld the admissibility of the evidence seized in the search under the authority of *Leon, supra,* 468 U.S. 897: "The DEA agent brought his evidence, including the positive 'alert' from the canine, to a neutral and detached magistrate. That magistrate determined that probable cause to search existed, and issued a search warrant. There is nothing more the officer could have or should have done under these circumstances to be sure his search would be legal. The magistrate, whose duty it is to interpret the law, determined that the canine sniff could form the basis for probable cause; it was reasonable for the officer to rely on this determination. The *Leon* court announced a 'good faith' exception to the exclusionary rule, and we find that the exception applies to this case." (*United States* v. *Thomas, supra,* 757 F.2d at p. 1368.)[5]

In arguing that the *Leon* exception should apply to sustain the admissibility of the evidence seized in defendant's residence by Detective Hansen, the Attorney General does not contend that the "good faith" of Deputy Battles and Sergeant Morrison alone is sufficient to validate a warrantless entry. Instead, the government makes the more focused claim that the *subsequent* search by Detective Hansen under a search warrant issued by a magistrate triggers the good faith exception of *Leon, supra,* 468 U.S. 897. This argument, of course, is analogous to the reasoning adopted by the Second and District of Columbia Circuits in *United States* v. *Thomas, supra,* 757 F.2d 1359 and *United States* v. *Thornton, supra,* 746 F.2d 39.

---

[5]In an earlier case, the District of Columbia Circuit employed similar reasoning to uphold a warranted house search based on evidence retrieved from a warrantless seizure of a suspect's garbage. On the basis of gambling chits found inside a plastic garbage bag and other information, a magistrate issued a warrant to search the suspect's house, where narcotics were found. "It was eminently reasonable," the appellate court wrote, "for the [judge who issued the warrant], and the police officers, to believe that the trash bag search was constitutional and its fruits could be used to establish probable cause, given that the overwhelming weight of authority rejects the proposition that a reasonable expectation of privacy exists with respect to trash discarded outside the home and the curtilage thereof." (*United States* v. *Thornton* (D.C. Cir. 1984) 746 F.2d 39, 49 [241 App.D.C. 46], fn. omitted.) Opinions in two other federal circuit decisions appear to extend the good faith exception well beyond the rationale offered by the high court in *Leon* itself; the principle upon which these results rest is unclear. In *United States* v. *White* (8th Cir. 1989) 890 F.2d 1413, police officers at an airport detained defendant at a baggage claim area and brought a trained dog to sniff for drugs. The dog "alerted" to defendant's baggage and a warrant issued on that basis. Although the Eighth Circuit found that the officers lacked an adequate factual basis to justify the seizure of the baggage, it upheld the admission of the seized evidence under *Leon, supra,* 398 U.S. 897, not because the warrant magistrate had been appraised of the circumstances of the seizure, but because the facts surrounding the seizure "push[] this case into the gray area created by *Leon.*" (890 F.2d at p. 1419.) Similarly, in *United States* v. *Carmona* (2d Cir. 1988) 858 F.2d 66 (*per curiam*), a panel of the Second Circuit affirmed a district court ruling (*sub nom. U.S.* v. *Londono* (E.D.N.Y. 1987) 659 F.Supp. 758) that although DEA agents conducted an illegal exploratory search, the good faith exception applied because the officers had an objectively reasonable belief that their conduct was lawful. (659 F.Supp. at pp. 763-764.)

The Attorney General argues that, contrary to the view taken by the Court of Appeal, Detective Hansen's affidavit was not objectively unreasonable. Instead, it presented a balanced account of the entry as related to him by Battles and Morrison, including the statement of the former that the officers would "have to go with" defendant. Because his affidavit in support of the warrant application fairly laid out for the magistrate the factual circumstances *underlying* the entry into defendant's house and observation of contraband in plain view, Hansen was entitled to rely on what was, in effect, an *implicit* adjudication by the warrant magistrate that the entry was consensual and thus passed constitutional muster.

We are not persuaded. Even assuming that the reasoning of the Second Circuit in *United States* v. *Thomas, supra,* 757 F.2d 1359, is sound as applied to the circumstances of that case, we reject its application here for several reasons. First, notwithstanding the government's argument, we are not convinced that the text or the organization of Hansen's affidavit reliably supports an inference that the magistrate was aware of and implicitly resolved the apparent inconsistency between the assertion attributed to Sergeant Morrison that the officers were "invited" into the house and the statement, attributed to Deputy Battles and found after some two and a half pages of not easily deciphered handwriting, that defendant was advised that the officers "would have to go with" him.

Moreover, it is virtually a truism in Fourth Amendment search cases that contested issues of consent typically present highly factual questions. (See, e.g., 3 LaFave, Search and Seizure (2d ed. 1987) §§ 8.1-8.2, pp. 146-235.) This characteristic suggests that such matters, typically involving evidentiary uncertainties, are not easily susceptible to reliable ex parte, nonadversarial resolution by a warrant magistrate. This seems especially so given the likelihood that magistrates, in the absence of a contrary showing, probably review the sufficiency of a warrant affidavit in a context in which the needs of law enforcement for expedition and the magistrate's own nonwarrant docket may exert pressure to move with more speed than deliberation.

■ In saying this, we do not fault the magistrate. Rather, we are mindful of the comment of this court in *People* v. *Cook* (1978) 22 Cal.3d 67, 93 [148 Cal.Rptr. 605, 583 P.2d 130], that "[u]nder the Constitution and the statutes the sole duty of a magistrate to whom an affidavit for a search warrant has been presented is to determine whether (1) the affidavit is 'supported by oath' and (2) the facts alleged therein constitute 'probable cause' for issuance of the warrant, and if so, to authorize an appropriately limited intrusion.

[Citations.] By negative implication, *it is not the magistrate's function also to determine whether the facts alleged in the affidavit were lawfully obtained.* Nor would the hearing on the application for a search warrant be a proper forum in which to litigate that question, for at least two reasons: it is not an adversary proceeding, and there is no provision for direct judicial review of an order granting or denying a search warrant on this or any other ground." (Italics added.)

■ Although the Attorney General acknowledges the force of our language in *Cook, supra,* 22 Cal.3d 67, he argues that the opinion in that case leaves room to accommodate the proposition that where police officers seeking a warrant "have fully presented a clear question of the constitutionality of the antecedent warrantless search . . . the magistrate must resolve that question." Indeed, the government's brief goes on to assert that "[u]nder the law as it currently appears, no reasonable law enforcement officer would conclude that when he has clearly presented such a constitutional question to a magistrate, including all material information on that question, that the magistrate would *ignore* that question instead of resolving it." (Italics in original.) This line of argument is foreclosed in this case by the reality of Detective Hansen's affidavit.

It may be true that, as the government contends, magistrates have a duty even after *People* v. *Cook, supra,* 22 Cal.3d 67, to assess the legality of an antecedent warrantless search when such an assessment is, in the Attorney General's words, "clearly requested in the warrant application." That is a question we need not decide here because, despite the government's vigorous efforts to portray Detective Hansen's affidavit as a pointed and balanced request to the magistrate to adjudicate the constitutionality of the underlying entry, we do not find that the text of the affidavit itself or the circumstances surrounding its submission exhibit sufficient indicia of reliability to support the government's position.

In short, given the character of Detective Hansen's affidavit, the fact-bound nature of the disputed consent issue, and the likelihood that warrant magistrates understand their essential role to be limited to a finding of probable cause rather than a more searching inquiry involving the constitutionality of the conduct underlying the seizure, we conclude that the *"Leon*-type" reasoning of United States v. *Thomas, supra,* 757 F.2d 1359, and *United States* v. *Thornton, supra,* 746 F.2d 39, cannot be applied here.[6]

---

[6]The high court has more than once noted this circumstantial effect on a magistrate's probable cause determinations: "It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal

V

Our conclusion that the good faith exception of *Leon, supra,* 468 U.S. 897, does not apply to validate the search at issue here marks the end of the inquiry, notwithstanding the argument of the Attorney General that we should remand the cause to the Court of Appeal to enable it to consider an alternative theory validating the officers' entry into defendant's house. Because it concluded that Detective Hansen's affidavit failed to resolve the "contradiction" between the accounts given by Deputy Battles and Sergeant Morrison, the Court of Appeal, according to the government's argument, did not pass on an alternative theory offered to validate the officers' warrantless entry—namely, that the circumstances of the entry were such that Battles and Morrison acted under a "reasonable mistake of fact" that defendant had given his consent. Indeed, the government contends that the municipal court judge found as a matter of fact *only* that defendant did not *actually* consent to the entry, not that Deputy Battles and Sergeant Morrison acted unreasonably in entering the house. We disagree.

The Court of Appeal expressly concluded that it was "not objectively reasonable" for the police officers to believe that were "invited" into defendant's residence or had his consent to enter, when they told him they wanted to see his guns and "would have to go with him" in order to retrieve them. Although it did not expressly refer to recent high court cases discussing the "reasonable mistake of fact" doctrine relied on by the Attorney General (see, e.g., *Illinois* v. *Rodiguez* (1990) 497 U.S. 177 [111 L.Ed.2d 148, 110 S.Ct. 2793]; and *Florida* v. *Jimeno* (1991) 500 U.S. 248 [114 L.Ed.2d 297, 111 S.Ct. 1801]), the Court of Appeal did not, as the government contends, "ignore" the argument. Rather, it reached the express legal conclusion that the officers' belief that defendant had consented to their entry was not objectively reasonable under the circumstances. Given that conclusion, and the fact that the issue here is the ultimate one of defendant's consent rather questions of apparent authority (as in *Rodiguez*) or the scope of actual

---

system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." (*Malley* v. *Briggs* (1966) 475 U.S. 335, 345-346 [89 L.Ed.2d 271, 281, 106 S.Ct. 1092], fn. omitted; cf. *Franks* v. *Delaware* (1978) 438 U.S. 154, 169 [57 L.Ed.2d 667, 680, 98 S.Ct. 2674] ["The magistrate has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations. *The pre-search proceeding will frequently be marked by haste* because of the understandable desire to act before the evidence disappears; *this urgency will not always permit the magistrate to make an extended independent examination of the affiant* or other witnesses." (Italics added.)].)

consent (as in *Jimeno*), we think it unlikely that the Court of Appeal would reach a different conclusion following a remand.[7]

CONCLUSION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Kennard, J., Baxter, J., George, J., and Turner, J.,* concurred.

---

[7]It is, moreover, questionable whether the government has preserved the issue for review. It was not until this case was before the Court of Appeal that the Attorney General contended that the officers' initial search was lawful under the *Rodriguez-Jimeno* principle. Defendant timely objected to this late assertion of an alternative theory. (See *People* v. *Smith* (1983) 34 Cal.3d 251, 271 [193 Cal.Rptr. 692, 667 P.2d 149].)

*Presiding Justice, Court of Appeal, Second District, Division Five, assigned by the Acting Chairperson of the Judicial Council.