Filed 11/14/13  P. v. Potter CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　　　v.<br><br>BENJAMIN POTTER,<br><br>　　　　Defendant and Appellant. | F066244<br><br>(Super. Ct. No. BF141853B)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Levy, Acting P.J., Cornell, J. and Peña, J.

## INTRODUCTION

Benjamin Potter appeals from the denial of his Penal Code[1] section 1538.5 motion to suppress evidence and his subsequent plea. He contends the trial court erred in denying his motion to suppress because the warrantless search of his home violated the Fourth Amendment to the United States Constitution. Specifically, he contends there was a lack of probable cause and no exigency or emergency aid exception to the warrant requirement. He also asserts the protective sweep was impermissible because he was merely detained and that detention occurred outside his home. We will affirm.

## PROCEDURAL BACKGROUND

In an information filed August 21, 2012, the Kern County District Attorney alleged defendant willfully and unlawfully possessed marijuana for the purpose of sale (Health & Saf. Code, § 11359, count 1) and willfully and unlawfully cultivated marijuana (*id.*, § 11358, count 2). It was further alleged as to both counts that defendant was armed with a firearm during the commission of the offenses within the meaning of section 12022, subdivision (a)(1).

On August 31, 2012, defendant was arraigned and entered pleas of not guilty and denied all allegations.

On September 21, 2012, defendant filed a motion to suppress evidence pursuant to section 1538.5. The People opposed the motion. Testimony was taken and the motion was heard and argued on October 5, 2012. The trial court denied the motion on October 9, 2012.

Thereafter, defendant pled no contest to cultivation of marijuana (Health & Saf. Code, § 11358, count 2) and admitted the firearm allegation (§ 12022, subd. (a)(1)).

On November 27, 2012, imposition of sentence was suspended and defendant was placed on three years' formal probation. Further, he was ordered to serve 120 days on the work release program. Various fines and fees were also imposed.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Defendant filed a timely notice of appeal.

## FACTUAL BACKGROUND[2]

In response to a call about two individuals engaged in a verbal altercation, and the possibility of an involved firearm, Sergeant Michael Grant with the Stallion Springs Police Department proceeded to a home located on Ack Ack Court in Tehachapi, California. Upon arrival, Grant observed two male subjects arguing in the front yard of the home. One of the subjects was defendant; the other was later identified as defendant's brother Jason Potter.

When Grant asked defendant to put his hands on his head and walk towards him, he noticed a black semiautomatic handgun in defendant's waistband. Defendant stated, "The gun is loaded. There's one in the chamber, and there's a shotgun in the trunk of the car." Defendant was detained and the handgun was seized. Jason Potter was also detained. Jason Potter advised Grant he had called police and that no shots had been fired.

After detaining both defendant and his brother, Grant observed movement inside the house. More particularly, Grant noted a curtain in a window to the left of the front door "moved about mid length at a diagonal as if somebody may have taken a hand and brushed them aside." The window was large, extending to knee height at the bottom. Grant asked defendant whether anyone was inside the home; defendant replied "no."

Although Grant did not see or hear anyone inside the home, he was concerned someone was inside. However, he did not walk up to the home to knock or look inside the window as he was the only officer on the scene. Grant called for additional units. He believed someone was inside the home who could be armed or injured. While waiting for backup to arrive, he spoke with both defendant and his brother. During that period, the

---

[2]The facts are derived from the testimony given at the hearing on the motion to suppress evidence.

curtains inside the home moved another four or five times. Approximately 20 minutes later, other officers arrived on scene.

The officers then approached the home. A sheriff's deputy knocked on the door, and the officers' presence was announced, but no one responded. Grant was unable to see into the home through the window. Although Grant had the keys to the home, they did not work and another officer kicked in the front door. The officers entered the home, and a large dog ran out.

Grant called down the hallway for anyone inside the home; there was no response. After waiting less than a minute, the officers proceeded down the hallway to the left of the front door, toward the room where Grant had observed movement of the curtains. He detected an odor of marijuana in the hallway. The door to the room in the front of the home was open. No one was present inside the room, however, Grant observed marijuana plants. More marijuana plants were found in a second bedroom. The rest of the home and the backyard were searched; other than two cats, no one was found inside.

After exiting the house with the other officers, Grant contacted the narcotics division. While waiting for narcotics officers to arrive, Grant retrieved the shotgun from defendant's vehicle parked in the driveway.

About 30 minutes later, Mike Booker, a Kern County deputy sheriff assigned to the HIDTA (High Intensity Drug Trafficking Area) task force, arrived. Grant relayed to Booker the circumstances of the entry and information regarding the plants he had observed inside. Booker understood Grant and the other officers entered to clear the home of other individuals and check for possible victims.

Booker went inside the home after speaking with Grant and the Potter brothers. He wanted to ensure the search warrant would be accurate and wanted to include the number of plants and a description of the equipment used to grow the plants. He was experienced in narcotics activity and did not want to base the information provided in the search warrant solely on another officer's testimony.

4.

The information Booker gathered was included in his affidavit accompanying the search warrant. Ultimately, the search warrant was granted following a telephonic application and request to Judge Marquez. Thereafter, the marijuana plants were seized from the residence.

## DISCUSSION

### Applicable Legal Standards

The United States and California Constitutions prohibit unreasonable searches and seizures. (U.S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 13.) A warrantless entry is "presumptively unreasonable." (*Payton v. New York* (1980) 445 U.S. 573, 587.) The presumption may be overcome by specifically establishing one of the few well-delineated exceptions to the warrant requirement. (*Katz v. United States* (1967) 389 U.S. 347, 357.) One of those exceptions includes "'the risk of danger to the police or to other persons inside or outside the dwelling.'" (*Minnesota v. Olson* (1990) 495 U.S. 91, 100.) Entry into a home on the basis of exigent circumstances requires probable cause to believe that the entry is justified. (*Ibid*.)

> "'Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards.' (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118; see Cal. Const., art. I, § 28, subd. (f)(2).) 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' (*Lenart*, at p. 1119.)

"'The touchstone of Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy."' (*California v. Ciraolo* (1986) 476 U.S. 207, 211, quoting *Katz v. United States*[, *supra*,] 389 U.S. 347, 360 (conc. opn. of Harlan, J.).)" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223-1224.)

Section 1538.5 provides, in relevant part, that "[a] defendant may move … to suppress as evidence any tangible or intangible thing obtained as a result of a search or

5.

seizure" if the search or seizure "without a warrant was unreasonable" or where there was an absence of "probable cause for the issuance of the warrant."

> """"A proceeding under … section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact.' [Citation.]" [Citation.] … In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' [Citation.]" (*People v. Green* (1996) 46 Cal.App.4th 367, 372.)

### *The Exigency Exception*

Defendant contends the warrantless entry into his house was not supported by probable cause to believe someone inside the home posed a danger to those present. The People contend the initial entry was justified based upon exigent circumstances.

> "'Exigent circumstances' … refers to 'an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.' [Citations.] 'There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers.' [Citation.]" (*People v. Ortiz* (1995) 32 Cal.App.4th 286, 291-292; see also *People v. Thompson* (2006) 38 Cal.4th 811, 818 [exigent circumstances include hot pursuit of fleeing felon, imminent destruction of evidence, the need to prevent suspect's escape, or the risk of danger to police or other persons inside or outside home]; *People v. Celis* (2004) 33 Cal.4th 667, 676.)

"The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." (*Warden v. Hayden* (1967) 387 U.S. 294, 298-299.)

6.

"'As a general rule, the reasonableness of an officer's conduct is dependent upon the existence of facts available to him at the moment of the search or seizure which would warrant a man of reasonable caution in the belief that the action taken was appropriate. [Citation.] And in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or "hunches," but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience ....' [Citation.]" (*People v. Duncan* (1986) 42 Cal.3d 91, 97-98.)

The standard to be applied is an objective one: "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' [Citation.] The officer's subjective motivation is irrelevant. [Citation.]" (*Brigham City v. Stuart* (2006) 547 U.S. 398, 404, italics omitted.)

Here, Sergeant Grant responded to a report of two suspects fighting. When he arrived on scene, one of the two suspects—defendant—was armed with a handgun. Defendant advised Grant that the handgun was loaded with "one in the chamber" and also indicated there was a shotgun in the trunk of his car. Once Grant had defendant and his brother detained in the front yard, he observed movement inside the defendant's residence. More specifically, Grant observed a curtain in a window at the front of the house, to the left of the front door, move "about mid length at a diagonal as if somebody may have taken a hand and brushed them aside." The window was large and extended to about knee height. Grant, who initially responded to the dispatch alone, called for assistance. While waiting for other officers to arrive, Grant observed the curtain move four or five more times. Grant was concerned there was someone inside who could be armed or that an individual inside could be injured.

Sergeant Grant's conduct was reasonable in light of the facts available to him. Those facts included defendant being armed with a loaded handgun and admitting to having a shotgun in the trunk of his car when Grant arrived on scene, and Grant's observation of continued movement at a front window inside the home over the course of 20 minutes. We believe these facts would "warrant a man of reasonable caution" to

7.

believe entry into the home was necessary to ensure officer safety and/or rule out injury to another. Grant's suspicions were particularized in light of the weapon in defendant's possession and the continued movement of the curtain inside the home. His conduct was not the product of a hunch, but rather a reasonable inference he was entitled to draw from the facts known to him and in light of his experience. (*People v. Duncan*, *supra*, 42 Cal.3d at pp. 97-98.) Notably, while the evidence reveals a large dog ran out of the house once officers entered and that two cats were also inside the home, there was no evidence or testimony indicating Grant was advised of either of these two possibilities while he waited for assistance. Thus, he could not have known the movement he was observing might be the result of the home's pets.

Defendant argues in cursory fashion that any exigency was created by the police. We do not agree. In *Kentucky v. King* (2011) 563 U.S. ___ [131 S.Ct. 1849], to which defendant cites in the absence of any analysis, police set up a controlled buy of crack cocaine. After the deal occurred, undercover officers directed uniformed officers to follow the suspect and stop him before he reached a nearby apartment. (*Id*. at p. __ [131 S.Ct. at p. 1854].) By the time officers reached the area, however, they heard only a door closing. They had no idea whether the suspect entered the apartment on the left- or right-hand side. The undercover officer advised via radio that the suspect ran into the apartment on the right, but the uniformed officers had already left their patrol cars; they were thus unaware of this fact. Smelling the odor of burning marijuana near the apartment to the left, the uninformed officers knocked loudly and announced their presence. In response to their knock, they could hear people inside and believed "'things were being moved inside the apartment.'" (*Ibid*.) The officers believed evidence was being destroyed and entered the home after kicking in the door. The occupants of the apartment were smoking marijuana, and a protective sweep revealed powder cocaine in plain view. Subsequently, cash, drug paraphernalia and crack cocaine were also located. (*Ibid*.) A motion to suppress evidence was denied, the circuit court finding probable cause. The Kentucky Court of Appeals affirmed, yet the Kentucky Supreme Court

8.

reversed. The nation's high court granted the state's petition for writ of certiorari. (*Id.* at pp. __ [131 S.Ct. at pp. 1854-1855[.)

The *King* court held that, under the exigent circumstances rule, warrantless entry is allowed where the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment. (*Kentucky v. King*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1858].) In this case, nothing in the testimony or evidence offered at the hearing on the motion to suppress indicates Sergeant Grant or the other officers responding to his call for assistance engaged or threatened to engage in conduct violating the Fourth Amendment. As we noted above, Grant responded reasonably to the facts before him, including the fact defendant was armed when Grant arrived on scene, and that even after Grant detained defendant and his brother, he detected movement behind a front window of the home when he had been advised no one was inside. After calling for the assistance of other officers, Grant waited, and during that wait, noted the continued movement of the curtain in a front room. He testified that movement occurred "as if somebody may have taken a hand and brushed" the curtain aside.

Defendant relies upon *People v. Ormonde* (2006) 143 Cal.App.4th 282 in support of his argument. In that case, a woman called from the corner of the block where the defendant's apartment was located to report that she had gotten in a fight with her estranged husband, Christopher Olson, and that Olson had pushed her and kicked her in the stomach. When two officers arrived at the defendant's apartment, Olson was standing next to a car, 10 feet away from the apartment's open front door. After arresting Olson, an officer entered the apartment and took three steps inside before the defendant, his girlfriend, and a small child came out from the back of the apartment. The officer had them step outside and eventually he obtained permission from the defendant to search a dresser and a backpack. Drugs belonging to the defendant were found as a result of that search. (*Id.* at pp. 286–289.)

In reversing the denial of the defendant's suppression motion, the *Ormonde* court found that exigent circumstances did not justify the initial entry into the house because

9.

the domestic violence victim was outside of the apartment, the estranged husband was arrested outside the apartment, none of the officers who testified articulated any reason to believe there were any other victims or suspects inside the apartment, and none of the violence was reported to have occurred inside the apartment. (*People v. Ormonde*, *supra*, 143 Cal.App.4th at pp. 291–292.)

*People v. Ormonde* is distinguishable from the instant case. While the alleged argument between the Potter brothers occurred in the front yard of the home and both brothers were detained outside, here Sergeant Grant, unlike the officers in *Ormonde*, had reason to believe, and testified that, an additional victim or suspect could be inside. The curtain in a front room of the home continued to move for a period of about 20 minutes, despite the brothers advising Grant no one was inside.

For the foregoing reasons, we conclude the court did not abuse its discretion when it denied defendant's motion to suppress.

### The Emergency Aid Exception

Defendant also contends the search of his home was not justified under the emergency aid exception to the warrant requirement.

"Under the 'emergency aid' exception, … 'officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" (*Kentucky v. King*, *supra*, 563 U.S. at p. __ [131 S.Ct. at p. 1856].) In *People v. Troyer* (2011) 51 Cal.4th 599, the state's high court stated:

> "The '"emergency aid"' exception to the warrant requirement 'does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises.' [Citation.] Rather, the exception 'requires only "an objectively reasonable basis for believing …" [citation] that "a person within [the house] is in need of immediate aid."' [Citation.] 'We are to approach the Fourth Amendment … with at least some measure of pragmatism. If there is a grave public need for the police to take preventive action, the Constitution may impose limits, but it will not bar the way.' [Citation.]" (*People v. Troyer*, *supra*, 51 Cal.4th at p. 606.)

The *Troyer* court noted that in balancing an individual's right to privacy against legitimate governmental interests as to the reasonableness of a search, the court "must be

10.

mindful of what is at stake. The possibility that immediate police action will prevent injury or death outweighs the affront to privacy when police enter the home under the reasonable but mistaken belief that an emergency exists." (*People v. Troyer*, *supra*, 51 Cal.4th at p. 606.) Here, while Sergeant Grant was advised by the Potter brothers that no one was inside the residence, he was not required to take them at their word. Further, after being advised there was no one inside the home, the curtain in a front window continued to move as if pulled back by someone's hand. Considering this together with the fact defendant had been armed with a handgun prior to Grant's arrival on scene, it was not unreasonable for Grant to believe the situation required entry to prevent possible injury or death or to render aid. Hindsight does not negate the reasonableness of Grant's belief in that need. He could not have known what events transpired prior to his arrival on scene.

Even though defendant cites a number of cases involving facts indicating the potential for emergency aid was greater than those presented here, that does not mean the facts available to Sergeant Grant were inconsequential or that those facts rendered Grant's action unreasonable. The United States Supreme Court has cautioned that investigating officers need not have "ironclad proof of 'a likely serious, life-threatening' injury" in order to apply the emergency aid exception to the warrant requirement. They need only an objectively reasonable basis to believe medical assistance is needed, or that someone inside is in danger. (*Michigan v. Fisher* (2009) 558 U.S. 45, 49.)

### *The Protective Sweep*

Finally, defendant maintains a protective sweep of his home was impermissible as he was merely detained outside the home and police lacked the required reasonable suspicion.

In *People v. Celis*, *supra*, 33 Cal.4th 667, the California Supreme Court noted as follows:

> "A protective sweep of a house for officer safety as described in [*Maryland v.*] *Buie* [(1990) 494 U.S. 325], *does not* require probable cause to believe

there is someone posing a danger to the officers in the area to be swept. [Citation.] A *Buie* sweep is unlike warrantless entry into a house based on exigent circumstances (one of which concerns the risk of danger to police officers or others on the scene); such an entry into a home must be supported by *probable cause* to believe that a dangerous person will be found inside. [Citation.] A protective sweep can be justified merely by a *reasonable suspicion* that the area to be swept harbors a dangerous person. [Citation.] Like the limited patdown for weapons …, a protective sweep may not be based on 'a mere "inchoate and unparticularized suspicion or 'hunch ….'"'" (*People v. Celis*, *supra*, at p. 678.)

Reasonable suspicion is determined on a case-by-case basis, looking at the "totality of the circumstances" to ascertain whether the the officer had "a particularized and objective basis" for his or her suspicion. (*United States v. Arvizu* (2002) 534 U.S. 266, 273.)

In *People v. Werner* (2012) 207 Cal.App.4th 1195, the Sixth Appellate District addressed the propriety of a protective sweep where a defendant was arrested outside his home and police subsequently performed a search of that home:

"A protective sweep is not limited to situations immediately following an arrest; it may occur in conjunction with a suspect's detention …. And in some instances, an entry of a residence solely to conduct a protective sweep may be justified to ensure the safety of officers effectuating arrests just outside. [Citations.] '"[I]n some circumstances, an arrest taking place just outside a home may pose an equally serious threat to the arresting officers" as one conducted inside the house. [Citations.]' [Citation.] The facts known to the officers before they perform such a protective sweep must still satisfy *Buie*; there must be '"articulable facts" considered together with the rational inferences drawn from those facts, that would warrant a reasonably prudent officer to entertain a reasonable suspicion that the area to [be] swept harbors a person posing a danger to officer safety. [Citation.]' [Citations.]" (*People v. Werner*, *supra*, 207 Cal.App.4th at p. 1206, fn. omitted.)

Unlike the officers in *Werner* and *Celis*, Sergeant Grant had reasonable suspicion to believe another person was inside the home and the person could pose a danger to officer safety. Grant arrived to a call concerning two individuals fighting. One of the individuals was personally armed and advised Grant that a shotgun was in the trunk of his car. After detaining both suspects in the front yard of the home, Grant, who responded to the dispatch call alone, noted movement inside the residence. More particularly, Grant

12.

observed movement in the curtain of a front window to the left of the home's entry door. The window was fairly large, extending to knee height. The curtain "moved about mid length at a diagonal as if somebody may have taken a hand and brushed them aside." Although no shots had been fired during the dispute between the individuals, they also advised there was no one inside their home. And yet, movement consistent with another person inside the home persisted despite their claims to the contrary. Considering the totality of circumstances here—defendant was personally armed and another weapon was purported to be in the trunk of his car, coupled with the movement of a curtain in the front window—Sergeant Grant rationally inferred that an individual was inside the home and posed a danger to police. Grant's suspicion was not based on "'mere inchoate and unparticularized suspicion or 'hunch.'" (*People v Celis*, *supra*, 33 Cal.4th at p. 678.)

In sum, we find the trial court properly denied defendant's motion to suppress evidence on this basis as well.

### *Fruit of the Poisonous Tree*

Defendant claims Grant's observations of the marijuana plants growing inside his home were the product of an illegal search because none of the exceptions to the exclusionary rule apply and there was no independent source of that information justifying a warrant. He thus concludes the evidence obtained from the search should have been suppressed.

> "Under the 'fruit of the poisonous tree' doctrine, both direct and indirect products of an unreasonable search are subject to exclusion. (*Wong Sun v. United States* [(1963)] 371 U.S. [471,] 484–485; *Murray v. United States* (1988) 487 U.S. 533, 536–537.) As explained by the California Supreme Court, '"[C]onducting an illegal warrantless search and including evidence found in this search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter." [Citation.] Moreover, because "the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search' [citation], the rule logically ought to bar the use of such evidence to support the issuance of a search warrant.' (*People v. Machupa* (1994) 7 Cal.4th 614, 628; see *People v. Willis* [(2002)] 28 Cal.4th [22,] 29

13.

[probable cause to support issuance of search warrant cannot be based upon observations made after warrantless unlawful entry].)" (*People v. Werner*, *supra*, 207 Cal.App.4th at p. 1213.)

Because we have already concluded Sergeant Grant had probable cause to believe an exigent circumstance existed—an individual inside the home either could be in need of emergency aid or could be armed and present a threat to officer safety—there is no reason to require the exclusion of evidence here.

The marijuana plants observed in defendant's home were not the product of an illegal or unreasonable search, and his Fourth Amendment rights were not violated. Therefore, the fact those observations were included in the affidavit to the search warrant application does not require exclusion of the evidence.

## DISPOSITION

The judgment is affirmed.