*160
 
 Opinion
 

 TURNER, P. J.
 

 I. Introduction
 

 Defendant, Junius M. LeBlanc, appeals after he was convicted of cocaine possession following the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5 and his ensuing nolo contendere plea. In the published portion of this opinion, we: determine he has timely filed a notice of appeal; reverse the order denying the motion to suppress evidence; and remand for the trial court to decide the consent and other issues.
 

 II. Timeliness of the Appeal
 

 The parties raise the question of whether the notice of appeal was timely filed. Defendant was sentenced to prison on September 18, 1996. The notice of appeal was given to prison officials for mailing on November 17, 1996, a Sunday. This was 60 days after the sentencing of September 18, 1996. Hence, giving the notice of appeal to the “Dorm Officer” of the unit in which defendant was incarcerated constituted constructive filing of the notice of appeal.
 
 (In re Jordan
 
 (1992) 4 Cal.4th 116, 129-130 [13 Cal.Rptr.2d 878, 840 P.2d 983];
 
 People
 
 v.
 
 Slobodion
 
 (1947) 30 Cal.2d 362, 365-368 [181 P.2d 868].) The fact the envelope containing the notice was addressed to the clerk of the Court of Appeal is irrelevant.
 
 (People
 
 v.
 
 Griggs
 
 (1967) 67 Cal.2d 314, 317-318 [61 Cal.Rptr. 641, 431 P.2d 225];
 
 People
 
 v.
 
 Jackson
 
 (1965) 62 Cal.2d 803, 805-806 [44 Cal.Rptr. 452, 402 P.2d 140];
 
 People
 
 v.
 
 Johnson
 
 (1964) 61 Cal.2d 843, 846 [40 Cal.Rptr. 708, 395 P.2d 668].)
 

 III. Suppression of Evidence Issue
 

 A.
 
 Procedural Aspects
 

 Prior to pleading nolo contendere, defendant moved to suppress evidence pursuant to Penal
 
 Code
 
 section 1538.5.
 
 [1]
 
 The trial court found all of the evidence seized was admissible. Defendant argues the section 1538.5 motion should have been granted. As will be noted, we conclude that the trial court’s findings warrant the admission into evidence of two cocaine pipes initially observed by the two officers while defendant was being arrested. However, three other categories of evidence were seized during the search of the motel room. The officers seized four additional cocaine pipes. Also, the
 
 *161
 
 officers seized three cocaine rocks. Moreover, defendant confessed. As to the remaining four pipes, the three rocks of cocaine, and the confession, the trial court’s findings do not at present permit their admission into evidence given the limitations imposed by the Fourth Amendment of the United States Constitution on the power of state authorities to search a motel room without a search warrant. However, as we will note, we cannot order the exclusion of the four pipes, three cocaine rocks, and confession at present because the trial court needs to make additional factual findings.
 

 B.
 
 State of the Evidence and the Trial Court’s Findings
 

 When we apply the applicable standard of review
 
 (Ornelas
 
 v.
 
 United States
 
 (1996) 517 U.S. 690, 697 [116 S.Ct. 1657, 1662, 134 L.Ed.2d 911];
 
 People
 
 v.
 
 Williams
 
 (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221];
 
 People
 
 v.
 
 Manning
 
 (1973) 33 Cal.App.3d 586, 602-604 [109 Cal.Rptr. 531]), the following were the facts. Uniformed Long Beach Police Officers Robert Smith and Jerry Gibbs drove in a marked cruiser to the Avalon Motel in order to serve two misdemeanor arrest warrants on defendant. Defendant had previously been arrested by Officer Smith for a narcotics-related offense. Defendant had “numerous” contacts with Officer Smith. Officer Smith had last spoken to defendant a “[c]ouple of weeks to a month” prior to the arrest at the Avalon Motel. Officer Smith “knew” defendant was involved in narcotics activity. The two officers went to room 12 and knocked on the door. Defendant answered the door. Defendant was advised there were two existing arrest warrants. Then both officers, while standing in the doorway of the motel room, handcuffed defendant. While standing in the doorway, Officer Smith saw what he recognized to be a glass cocaine pipe on a dresser on the west wall of the room. The dresser was approximately five feet from Officer Smith as defendant was being handcuffed. Defendant was walked out to the area in front of the apartment by Officer Smith. While standing outside the motel room, defendant consented to a search of the premises. While defendant was consenting, Officer Gibbs remained in the doorway so as to watch the other individuals in the motel room. While remaining in the doorway watching the other occupants of the motel room, Officer Gibbs saw what he believed to be contraband in the back of the closet on a ledge. Officer Gibbs made this observation while defendant was being handcuffed. The officer described the contraband as a “rock-like object.” Officer Gibbs then saw a glass cocaine pipe. During the search of the motel room, the officers recovered six glass cocaine pipes. Also recovered was a rock of cocaine under the carpet and a shoe belonging to defendant which also contained one of the six glass cocaine pipes. Another cocaine rock, the one observed by Officer Gibbs when he was standing in the door, was found on a ledge. Moreover, a rock of cocaine was recovered
 
 *162
 
 when Kurt McGarry, another person in the room, stood up after defendant consented to the search. After waiving his constitutional rights pursuant to
 
 Miranda
 
 v.
 
 Arizona
 
 (1966) 384 U.S. 436, 469-473 [86 S.Ct. 1602, 1625-1627, 16 L.Ed.2d 694, 10 A.L.R.3d 974], defendant later confessed to the possession of the contraband.
 

 Defendant also presented testimony. This testimony was at odds with some of that presented by Officers Smith and Gibbs. Mr. McGarry, a friend of defendant, testified to being present during the arrest and search on May 16,1996. Mr. McGarry was on parole for commercial burglary. He had been convicted of commercial burglary in Long Beach in 1994. He as also convicted of a nonspecified felony in Orange County on August 6, 1992. Room 12 was rented by defendant, according to Mr. McGarry. Prior to the arrival of the police, Mr. McGarry did not see any drugs of any kind or any cocaine pipes. Mr. McGarry indicated that the police arrived and pushed their way three or four feet into room 12. Defendant was handcuffed and placed in a chair. The officers advised defendant concerning the misdemeanor warrants. Mr. McGarry was asked why he was in the room. Officer Smith indicated Mr. McGarry’s explanation was unacceptable. Officer Smith said, “ ‘Come on, you can come up with something better than that.’ ” Mr. McGarry then consented to a search of the premises. Mr. McGarry was then searched and told to go stand by the door. After some rock cocaine was discovered, Mr. McGarry was arrested. Mr. McGarry never heard defendant consent to a search of the room.
 

 When Mr. McGarry was cross-examined, he was impeached in several areas in addition to his prior convictions. He claimed to have seen defendant 15 to 20 times per year in the preceding 5 years. However, Mr. McGarry admitted that he had been in prison custody during part of the preceding five years. During that time period, Mr. McGarry did not see defendant. Further, he testified that prior to the arrival of the police there was no conversation among the persons in room 12. However, he then changed his testimony and admitted there was discussion among the occupants of the room prior to the arrival of the police. Further, Mr. McGarry testified he had never been convicted for a drug-related offense. However, on June 30, 1989, he was convicted of a violation of Health and Safety Code section 11365.
 

 Defendant also testified in connection with the suppression of evidence motion. He was completely unaware of the drugs and drug paraphernalia in the room. He had resided in the room for five or six days at the time of his arrest. However, defendant did not know how the contraband and the cocaine pipes got into the room. He speculated that they could have been left by others in “cracks and crevices” or compartments in the motel room. When
 
 *163
 
 pressed on cross-examination, defendant admitted that he never saw “any unusual bulges” in the areas where he walked during the five days he had been living in the motel. Defendant saw Officer Smith approach room 12. As Officer Smith was looking through a window, defendant said, “ ‘What’s up, dog?’ ” Officer Smith responded, “ ‘Marco, I want to talk to you.’ ” Defendant then immediately opened the door and said, “ ‘What’s up.’ ” One of the officers said, “ ‘Can we talk to you inside.’ ” Defendant responded: “ ‘No, what do you want to talk to me inside for?’ ” One of the officers said, “ ‘You know you’ve got warrants.’ ” Defendant responded, “ ‘You were the one that told me about the warrants, Officer Smith.’ ” Defendant explained that he had previously spoken to Officer Smith about the arrest warrants. Defendant explained his reason for refusing to consent to the officers entering the room for the following reason: “Because what reason did he have, you know, to want to come in my room and talk to me when all he has to do is ask me to step outside and talk to me. So something fishy right there to me, you know, just didn’t seem right. He never was like that before towards me.” The officers grabbed defendant’s arms and handcuffed him. Defendant was pushed into the room and placed in a chair. Officer Smith then walked straight to Mr. McGarry, who was searched and questioned. At no time did defendant consent to the search of the motel room. Defendant admitted he had previously been convicted of armed robbery. Additionally, defendant had been sentenced to prison for “selling cocaine and . . . possession for sale.” In 1990 and 1991, defendant was “in and out of state prison .... on parole revocations.”
 

 The trial court determined that there was probable cause to search the premises based on the officers’ observations of cocaine pipes. Further, the court concluded that because there was probable cause to search, there was no need to secure a warrant. The trial judge made no finding as to some of the plain sight or consent issues. The trial judge concluded that because there was probable cause to search, consent was not a material consideration. As we will explain, given its factual findings, the trial court was correct as to the seizure of the cocaine pipe which was observed by Officers Smith and Gibbs while defendant was being handcuffed. As to the remaining four pipes, the three cocaine rocks, and the confession, as we will explain, there will be a need for further findings by the trial judge.
 

 C.
 
 The Two Cocaine Pipes Observed by Officers Smith and Gibbs While Defendant Was Being Handcuffed
 

 We agree with the Attorney General that, given the trial judge’s factual findings, the two cocaine pipes observed by Officers Smith and Gibbs while defendant was being handcuffed were lawfully seized. The
 
 *164
 
 officers had the authority to enter the premises to execute the arrest warrant. Entry across the threshold into a motel room as occurred here normally requires a search warrant.
 
 (Stoner
 
 v.
 
 California
 
 (1964) 376 U.S. 483, 486-490 [84 S.Ct. 889, 891-894, 11 L.Ed.2d 856];
 
 People
 
 v.
 
 Williams, supra,
 
 45 Cal.3d at p. 1297.) However, the United States Supreme Court has held that an arrest warrant may permit entry into a residence. The effect of an arrest warrant on the right of a police officer to enter a residence was described in
 
 Steagald
 
 v.
 
 United States
 
 (1981) 451 U.S. 204, 214-215, footnote 7 [101 S.Ct. 1642, 1648, 68 L.Ed.2d 38], by the United States Supreme Court as follows, “Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person’s privacy interest when it is necessary to arrest him in his home.” Similarly,
 
 Payton
 
 v.
 
 New York
 
 (1980) 445 U.S. 573, 603 [100 S.Ct. 1371, 1388, 63 L.Ed.2d 639], the Supreme Court held, “Thus, for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.” In
 
 Maryland
 
 v.
 
 Buie
 
 (1990) 494 U.S. 325, 330 [110 S.Ct. 1093, 1096, 108 L.Ed.2d 276], the United States Supreme Court held: “It is not disputed that until the point of Buie’s arrest the police had the right, based on the authority of the arrest warrant, to search anywhere in the house that Buie might have been found, including the basement. ‘If there is sufficient evidence of a citizen’s participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law.’ [Citation.]” We agree with the Attorney General that the fact that the two warrants were for misdemeanors as distinguished as from felonies is constitutionally irrelevant.
 
 (United States
 
 v.
 
 Spencer
 
 (2d Cir. 1982) 684 F.2d 220, 223-224;
 
 Smith
 
 v.
 
 Tolley
 
 (E.D.Va. 1997) 960 F.Supp. 977, 992;
 
 State
 
 v.
 
 Bass
 
 (La.Ct.App. 1992) 595 So.2d 820, 823;
 
 State
 
 v.
 
 Brosnan
 
 (1991) 24 Conn.App. 473 [589 A.2d 1234, 1238]; accord,
 
 People
 
 v.
 
 O’Hearn
 
 (Colo. 1997) 931 P.2d 1168, 1174, fn. 7;
 
 Sloan
 
 v.
 
 State
 
 (Fla.Dist.Ct.App. 1983) 429 So.2d 354, 358, fn. 4.) Unquestionably, because Officers Smith and Gibbs had arrest warrants for defendant, they could at the very least: demand entry; if need be, they could force their way into room 12; and then search the room for
 
 defendant.
 

 Under the version of the testimony accepted by the court, the officers were free to handcuff defendant in the threshold while standing in the doorway or the interior of the room. This was because they had an arrest warrant. It was during this initial phase of the incident that the observations of cocaine pipes were made by Officers Smith and Gibbs. The trial judge’s findings indicate she fully credited the officers’ testimony that they could see the two cocaine pipes while defendant was being handcuffed. Solely from this factual predicate, the trial judge concluded that the observation of the cocaine pipes
 
 *165
 
 permitted a search of the entire room. We respectfully disagree that the entire room could be searched based solely on the initial observations of the two crack cocaine pipes. Rather, as we will indicate, the trial court’s findings allowed the two cocaine pipes to be seized, but nothing else, and further findings are necessitated before other evidence is admissible.
 

 The seizure of the two cocaine pipes observed during the handcuffing of defendant were admissible under the Fourth Amendment. We agree with the argument of the Attorney General that the two pipes were observed by the officers while they standing in a place they had a right to be and were hence admissible as contraband seized in plain sight. The plain view doctrine is simply a part of the Fourth Amendment reasonableness standard. The United States Supreme Court has held: “The plain view doctrine ‘merely reflects an application of the Fourth Amendment’s central requirement of reasonableness to the law governing seizures of property. [Citations.]”
 
 (Soldal
 
 v.
 
 Cook County
 
 (1992) 506 U.S. 56, 66 [113 S.Ct. 538, 546, 121 L.Ed.2d 450].) The Supreme Court described the limitations and the expanse of the plain view doctrine in
 
 Horton
 
 v.
 
 California
 
 (1990) 496 U.S. 128, 134-136 [110 S.Ct. 2301, 2306-2307, 110 L.Ed.2d 112] as follows: “‘It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases,
 
 any
 
 evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the “plain view” doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal. [*][] ‘An example of the applicability of the “plain-view” doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character. [Citations.] Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in “hot pursuit” of a fleeing suspect. [Citation.] And an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. [Citations.] Finally, the “plain-view” doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. [Citations.] [CJD ‘What the “plain-view” cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or
 
 *166
 
 some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the “plain-view” doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.’ [Citation.]” In
 
 Horton,
 
 the United States Supreme Court added this additional requirement to the application of the plain view rule; “It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be ‘immediately apparent.’ [Citations.]”
 
 (Id.
 
 at p. 136 [110 S.Ct. at p. 2308].) Application of
 
 Horton
 
 to the present case supports the conclusion that there has been compliance with the Fourth Amendment reasonableness standard since the officers were in a place they had a right to be. Hence, they were entitled to seize the two cocaine pipes they observed while handcuffing defendant which were in plain view.
 

 D.
 
 The Remaining Evidence
 

 The trial court concluded that the seizure of the two glass cocaine pipes created, first, probable cause to believe that the other narcotics or paraphernalia might be present and, second, disposed of the warrant requirement. We agree with the first line of analysis and disagree with the second conclusion concerning the fact that probable cause is an exception to the warrant requirement. To begin with, we agree that the presence of the two glass cocaine pipes plus Officer Smith’s prior contacts with defendant created a fair probability that other drugs or paraphernalia were likewise present; i.e., there was probable cause to search.
 
 (Illinois
 
 v.
 
 Gates
 
 (1983) 462 U.S. 213, 246 [103 S.Ct. 2317, 2336, 76 L.Ed.2d 527];
 
 People
 
 v.
 
 Hobbs
 
 (1994) 7 Cal.4th 948, 975 [30 Cal.Rptr.2d 651, 873 P.2d 1246]; e.g.,
 
 State
 
 v.
 
 Moore
 
 (Tenn.Crim.App. 1997) 949 S.W.2d 704, 706 [presence of cocaine pipe in plain view warranted further search of defendant’s person];
 
 State
 
 v.
 
 Mitchell
 
 (Fla.Dist.Ct.App. 1994) 638 So.2d 1015, 1016 [discovery of cocaine pipes and “ring baggie” in front seat of defendant’s car provided officer with probable cause to search contents of bag of clothes in automobile]; Vercher
 
 v. State
 
 (Tex.Crim.App. 1993) 861 S.W.2d 68, 70-71 [cocaine pipe on floorboard provided probable cause];
 
 State
 
 v.
 
 Ward
 
 (1992) 80 Ohio App.3d 701 [610 N.E.2d 579, 580] [seizure of crack cocaine pipe constitutional];
 
 Stanley
 
 v.
 
 State
 
 (Fla.Dist.Ct.App. 1990) 559 So.2d 460, 462 [probable cause to arrest created in part by cocaine pipe].)
 

 
 *167
 
 However, we disagree with the trial court’s conclusion that because there was probable cause to search, no warrant need be secured. The United States Supreme Court has repeatedly stated: “ ‘This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent “exigent circumstances.” Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.
 
 Taylor
 
 v.
 
 United States,
 
 286 U.S. 1 [52 S.Ct. 466, 76 L.Ed. 951] [(1932)];
 
 Johnson
 
 v.
 
 United States,
 
 333 U.S. 10 [68 S.Ct. 367, 92 L.Ed. 436] [(1948)];
 
 McDonald
 
 v.
 
 United States,
 
 335 U.S. 451 [69 S.Ct. 191, 93 L.Ed. 153] [(1948)];
 
 Jones
 
 v.
 
 United States,
 
 357 U.S. 493, 497-498 [78 S.Ct. 1253, 2 L.Ed.2d 1514] [(1958)];
 
 Chapman
 
 v.
 
 United States,
 
 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828] [(1961)];
 
 Trupiano
 
 v.
 
 United States,
 
 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663] [(1948)].’ [Citation.]”
 
 (Horton
 
 v.
 
 California, supra,
 
 496 U.S. at p. 137, fn. 7 [110 S.Ct. at p. 2308].) Therefore, absent consent or exigent circumstances, the search of the remainder of the motel room was not objectively reasonable within the meaning of the Fourth Amendment. As a result, the sole ground relied upon by the trial judge for validating the search which produced the four other pipes, the cocaine, and defendant’s confession may not serve as a basis for affirming the judgment.
 

 E.
 
 Proceedings on Remand
 

 Because the order denying the motion to suppress some of the paraphernalia, contraband, and the confession may not be sustained under the Fourth Amendment, even though the two cocaine pipes were admissible as determined by the trial judge, the judgment must be reversed. However, we agree with the Attorney General that the evidence need not be ordered suppressed until the trial judge has an opportunity to address the consent, protective sweep, and exigent circumstances contentions of the prosecution and make appropriate findings on those subjects. In
 
 People
 
 v.
 
 Henderson
 
 (1990) 220 Cal.App.3d 1632,1642-1643 [270 Cal.Rptr. 248], the defendant, after pleading guilty, challenged the trial judge’s findings on a legal issue in connection with a suppression of evidence motion, which was denied. The Court of Appeal determined that the trial judge’s analysis as to why the evidence was admissible was in error. However, in ruling on the suppression of evidence motion, the trial judge did not reach the issue proffered by the prosecution that the entry to the premises could not be justified under the “independent source doctrine.”
 
 (Murray
 
 v.
 
 United States
 
 (1988) 487 U.S. 533, 537-539 [108 S.Ct. 2529, 2533-2534, 101 L.Ed.2d 472];
 
 Segura
 
 v.
 
 United States
 
 (1984) 468 U.S. 796, 805, 813-816 [104 S.Ct. 3380, 3385-3386, 3389-3391,
 
 *168
 
 82 L.Ed.2d 599]; cf.
 
 People
 
 v.
 
 Machupa
 
 (1994) 7 Cal.4th 614, 628 [29 Cal.Rptr.2d 775, 872 P.2d 114].) In other words, although the basis relied upon by the trial judge did not permit the challenged evidence to be admitted consistent with the requirements of the Fourth Amendment, there was an additional ground which had not been evaluated which would have permitted the motion to suppress to be denied. As a result, the Court of Appeal reversed the judgment and remanded to allow the trial judge to address the additional ground which may have allowed the suppression of evidence motion to be denied. The Court of Appeal held: “Because the court did not separately review the monitoring of the videotape cameras from the consent for the entry issue, it did not determine whether the illegal video monitoring tainted the subsequent entry of the condo. Consequently, the People were not given the opportunity to prove attenuation of any taint. Accordingly, the matter must be reversed and remanded for the trial court to determine whether the consensual physical entry into the condo was tainted by the earlier illegal video surveillance and, if so, what evidence must be suppressed. If the entry can be justified under the “independent source doctrine”
 
 (Murray
 
 v.
 
 United States
 
 (1988) 487 U.S. 533, 537-539 . . .), the fruits of that search would be admissible and the motion to suppress again denied. If not, then the court should specifically delineate what evidence would be suppressed since under the facts of this case, much of the evidence coming from [the informant] would independently be admissible.”
 
 (People
 
 v.
 
 Henderson, supra, 220
 
 Cal.App.3d at p. 1654.) The same is true in this case. The ground relied upon by the trial judge does not permit the four remaining cocaine pipes, the three rocks of contraband, and defendant’s confession to be received in evidence. However, there were other grounds which, depending on the trial judge’s factual findings, may very well permit or even mandate as a matter of constitutional law, that some or all of the four pipes, cocaine rocks or confession be received into evidence. We leave these issues in the good hands of the experienced trial judge. We remand to allow the trial judge to resolve the alternative issues.
 
 (People
 
 v.
 
 Brooks
 
 (1980) 26 Cal.3d 471, 483 [162 Cal.Rptr. 177, 605 P.2d 1306] [remand to allow trial judge to address alternate grounds for suppression of evidence]; § 1260.)
 

 Defendant argues that he is entitled to withdraw his guilty plea. If we determined that any of the challenged evidence were inadmissible, we would agree. In
 
 People
 
 v.
 
 Hill
 
 (1974) 12 Cal.3d 731, 769-770 [117 Cal.Rptr. 393, 528 P.2d 1], disapproved on another point in
 
 People
 
 v.
 
 DeVaughn
 
 (1977) 18 Cal.3d 889, 896, footnote 5 [135 Cal.Rptr. 786, 558 P.2d 872], the Supreme Court held that certain evidence should have been suppressed. Because it was impossible to determine whether some or all of the evidence, ordered for the first time excluded on appeal, would have affected the decision to plead guilty, the Supreme Court held that normal harmless error principles were
 
 *169
 
 inapplicable.
 
 (People
 
 v.
 
 Hill, supra,
 
 12 Cal.3d at pp. 769-770.) The California Supreme Court held: “The accused must be afforded an opportunity to personally elect whether, contrary to the trial court’s ruling,
 
 the suppression of certain items of evidence would alter the situation in a sufficiently favorable manner so as to render a plea of not guilty strategically preferable.” (Id.
 
 at p. 769, fn. omitted, italics added.) The footnote to the foregoing quotation states: “Parenthetically we note that to hold otherwise might frustrate the legislative purpose behind section 1538.5, subdivision (m). By establishing in subdivision (m) an exception to the long-standing rule limiting review of convictions based on guilty pleas (see § 1237.5;
 
 People
 
 v.
 
 Ward
 
 (1967) 66 Cal.2d 571, 575 . . .), the Legislature presumably hoped to avoid the inconvenience and expense of a trial where the only substantial contested issue is the lawfulness of a search and seizure. If we were to conclude that the harmless error doctrine was applicable in the context of an appeal under section 1538.5, subdivision (m), a defendant who challenges the admissibility of multiple items of evidence might be less inclined to plead guilty so as to obtain a speedy appellate review of an adverse ruling on his suppression motion. By assuring such a defendant that he will be entitled to enter a new plea
 
 if some, but not all, of the challenged evidence is deemed inadmissible on appeal,
 
 today’s decision operates to further the Legislature’s intention of encouraging a guilty plea by a defendant whose defense rests on the asserted illegality of a search and seizure.”
 
 (Id.
 
 at p. 769, fn. 38, italics added.) Unlike
 
 Hill
 
 and its progeny, we have not ordered the exclusion of any evidence. Rather, we have reversed the judgment and directed that the trial judge address the remaining justifications proffered by the prosecution. This is not a case
 
 at present
 
 where in the words of
 
 Hill,
 
 “the suppression of certain items of evidence would alter the situation in a sufficiently favorable manner so as to render a plea of not guilty strategically preferable.”
 
 (Id.
 
 at p. 769.) This is because
 
 at present,
 
 no evidence has been ordered suppressed. No California Supreme Court decision applying
 
 Hill (People
 
 v.
 
 Ruggles
 
 (1985) 39 Cal.3d 1, 13 [216 Cal.Rptr. 88, 702 P.2d 170];
 
 People
 
 v.
 
 Miller
 
 (1983) 33 Cal.3d 545, 550-553 [189 Cal.Rptr. 519, 658 P.2d 1320];
 
 In re Scott K.
 
 (1979) 24 Cal.3d 395, 400 [155 Cal.Rptr. 671, 595 P.2d 105];
 
 People
 
 v.
 
 Rios
 
 (1976) 16 Cal.3d 351, 354 [128 Cal.Rptr. 5, 546 P.2d 293];
 
 People
 
 v.
 
 Scott
 
 (1976) 16 Cal.3d 242, 250-251 [128 Cal.Rptr. 39, 546 P.2d 327];
 
 People
 
 v.
 
 Dalton
 
 (1979) 24 Cal.3d 850, 860 [157 Cal.Rptr. 497, 598 P.2d 467]) has addressed the unusual procedural scenario before us where the judgment in a section 1538.5, subdivision (m) proceeding has been reversed based on insufficient findings but no evidence has been ordered suppressed as of yet. However, if on remand when proceedings pursuant to section 1538.5 are reinstituted, the trial judge determines that any of the challenged items of evidence, even a single rock, pipe, or material part
 
 (People
 
 v.
 
 Ingram
 
 (1981) 122 Cal.App.3d 673, 681-682 [176 Cal.Rptr. 199];
 
 *170
 

 People
 
 v.
 
 Mack
 
 (1977) 66 Cal.App.3d 839, 849 [136 Cal.Rptr. 283]) of defendant’s confession must be suppressed,
 
 Hill
 
 and its progeny without question mandate that defendant be given the option of setting aside his plea and admission and proceeding to trial. Further, all of the charges including the prior prison term enhancement allegations (§ 667.5) must be reinstated.
 
 (People
 
 v.
 
 Hill, supra,
 
 12 Cal.3d at pp. 768-770.)
 

 IV. Disposition
 

 The judgment is reversed and the cause is remanded for proceedings consistent with the views expressed in the body of this opinion.
 

 Grignon, J., and Armstrong, J., concurred.
 

 [1]
 

 All future statutory references are to the Penal Code.