Filed 8/22/22 Turner v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| MARTELL TURNER,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>RIVERSIDE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | E078218<br><br>(Super.Ct.No. RIF2101256)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ. Ronald I. Toff, Judge. Petition granted.

Law Offices of Greenberg & Greenberg, Daniel L. Greenberg, Philip C. Greenberg and Charles E. Kenyon for Petitioner.

No appearance for the Respondent.

Michael A. Hestrin, District Attorney, and Sophia Choi, Deputy District Attorney for Real Party in Interest.

In this writ proceeding, petitioner Martell Turner seeks review of the trial court's denial of his motion to suppress evidence. The evidence was discovered during an inventory search of Turner's car conducted when law enforcement impounded it after arresting him on suspicion of misdemeanor reckless driving under Vehicle Code section 23103, subdivision (a) (undesignated statutory references are to this code). Section 23109.2, subdivision (a)(1) (section 23109.2(a)(1)) grants law enforcement officers discretion to "cause the removal and seizure of the motor vehicle used in that offense." The trial court concluded that the law enforcement officer's reasons for impounding the car were not relevant because the impound was authorized by statute. Turner argues that was error, and we agree. We grant the petition and remand for further proceedings.

## BACKGROUND

The People filed a felony complaint against Turner alleging that on a specified date in December 2020 he violated Penal Code section 29800, subdivision (a)(1), and Penal Code section 30305, subdivision (a), by being a prohibited person in possession of a firearm and ammunition. Turner moved to suppress evidence. (Pen. Code, § 1538.5.) The motion was based on "all the papers and records on file in [the] action, and on such oral and documentary evidence as may be presented at the preliminary hearing." No exhibits accompanied the motion. The People opposed the motion and did not submit any evidence with their opposition.

At the hearing on the suppression motion, Deputy Joseph Smith of the Riverside County Sheriff's Department testified for the prosecution. Our description of the facts is

2

based on Smith's testimony, which was the only evidence admitted at the hearing that has been included in the exhibits in this writ proceeding.[1]

One afternoon in December 2020 at about 3:00 p.m., Smith was on a routine patrol when he noticed a car "do a burnout." Through his open car window, Smith heard tires screeching and turned toward the noise, where he noticed a silver Mercedes "smoking from the rear tires and losing traction." Smith believed the driver was speeding. Smith identified Turner as the car's driver. Turner was turning into a self-service car wash. The maneuver left two skid marks on the street.

Smith followed Turner into the car wash and conducted a traffic stop. Smith stopped behind Turner's car and directed Turner to get out. Turner complied. Smith conducted a cursory pat down of Turner, notified Turner of why he was stopped, and asked Turner to sit on a nearby curb while Smith conducted a driver's license search. Turner provided Smith with a valid driver's license, vehicle registration, and insurance, which Smith confirmed "checked out."

---

[1] Turner attached numerous exhibits to his petition and traverse, but they were not admitted in the trial court. Those exhibits include a video recording from a body camera worn by Smith during the incident, an inventory form apparently prepared in connection with the search of Turner's car, the sheriff's department incident report, and the Riverside County Sheriff's Department Standards Manual. Both parties argue about how that evidence supports their position. We do not consider any of that evidence, however, because none of it was presented to the trial court. (*People v. Williams* (2006) 145 Cal.App.4th 756, 762 (*Williams*) ["This evidence was irrelevant, as it was not before the court at the earlier suppression hearing"]; *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration'"].) In addition, we also do not consider a photographic exhibit that Turner introduced at the hearing because it is not included in the exhibits filed in this writ proceeding.

3

Smith asked Turner what happened. Turner explained "that he just had work done to the vehicle," which was "the reason why he lost control of his vehicle." Smith told Turner that he should not be driving the car if it was "not mechanically sound," to which Turner responded that the car "was fine."

Smith wore a body camera that recorded the incident, which lasted about 10 minutes. The recording was not admitted into evidence. According to Smith's testimony, for the duration of the recording he was undecided about whether to exercise his discretion to arrest Turner.

Smith asked Turner numerous times if he could search the car. Turner refused. Smith did not have a warrant to conduct such a search. It is Smith's practice to ask individuals for permission to search their vehicles when he "come[s] into contact" with them. He clarified that he asks a "fair amount of people" he stops for permission to search their vehicles. Defense counsel asked Smith if he would ask to search a vehicle after conducting "an ordinary traffic stop for illegally tinted windows," and Smith said that it depended on the circumstances and "kind of what [he is] gathering from that stop itself." Asked to clarify what he meant, Smith answered, "Are they being deceptive, are they talking to me normally, are they argumentative. There's a lot of things that I'm looking for to better assist in my investigation."

Smith consulted with his partner and decided to arrest Turner for reckless driving under section 23103, subdivision (a), which Smith believed Turner had violated because

4

of the length of the skid marks in the street and the number of people in the parking lot. Smith described the parking lot as very busy, with many pedestrians in the area.

Smith placed Turner in the back seat of his patrol car and decided to have Turner's car towed. Asked why he made that decision, Smith initially responded that his decision was based on Turner's "driving actions." The court asked Smith if he "tow[ed] every vehicle when you see somebody is trying to get somewhere," and Smith answered, "When they're reckless driving, sir." Asked a follow-up question by the court about whether he towed "every reckless driving vehicle," Smith explained that he "made the discretion to tow that vehicle." The prosecutor asked Smith if the sheriff's department had a policy concerning when deputies should tow vehicles or if the decision is "discretionary." Smith said the decision was discretionary, and he did not mention any departmental policy. No departmental policy was admitted into evidence. Smith further explained that he was statutorily authorized to tow the car. Smith described his decision as "a very good tow."

Asked to explain what, if any, specific factors led him to exercise his discretion to tow the car, Smith answered, "Mainly it was how busy the parking lot was." Smith also said that he decided to have the car towed because of Turner's "actions" in driving it, which Smith believed could have injured someone. Smith also said that given Turner's explanation of what happened, Smith "didn't feel the vehicle was safe to leave in it" or for "somebody to drive off in" the car. On cross-examination, Smith admitted that it

5

could have been safe to "idle that vehicle across the parking lot and park it." Smith was not sure if there was anything wrong with the car. He did not notice any damage to it.

When Smith told Turner that the car would be towed, Turner "became argumentative." Turner repeatedly asked Smith if a friend who was present at the car wash could take his car. Smith had noticed Turner's friend earlier and consequently called for back-up, prompting multiple additional law enforcement units to come to the scene. Smith described Turner's friend as appearing "very upset," walking around "using a lot of vulgar language," and making "boisterous" comments, but Smith could not recall what was said.

The prosecutor asked Smith why he did not release the car to Turner's friend, and Smith responded, "Um, I made the discretion to tow the vehicle." Smith acknowledged on cross-examination that he was "permitted to" "leave [Turner's] vehicle with his friend" and that he also could have asked Turner if there was anyone else available to pick up the car. On redirect examination, the prosecutor asked Smith why he did not "want to ask any other people that may have been associated with [Turner] to take his car," and Smith responded, "Honestly, I didn't want to argue with anybody else."

Smith described Turner's car as being parked in the "middle of the roadway" of the car wash. It was not in "a wash," in a parking stall, or "next to a vacuum cleaner." Smith confirmed that the car was "blocking" "cars from driving through the direction in which he was block[ed]." The car wash was accessible to the public 24 hours a day, seven days a week, and did not have any type of security. Customers were entering and

6

leaving the driveway. Smith agreed with defense counsel's characterization of Turner's car as being "pretty high-end."

Smith confirmed that he could have driven the car about 50 feet and found a parking spot, but he does not like leaving cars in parking lots because they could be broken into or stolen. Looking at a still shot from the body camera recording, Smith acknowledged that there was another Mercedes at the car wash and two other relatively new cars parked in the lot.

Once law enforcement officers placed Turner in handcuffs, he and his friend "became argumentative," so law enforcement officers removed Turner from the scene "for officer safety reasons." After Turner was taken away from the scene and before the tow truck arrived 20 minutes later, another sheriff's deputy searched the car and found a loaded nine-millimeter firearm. No information was provided about where in the car the firearm was discovered.

Another deputy who was present during the search but did not conduct it filled out the requisite form for inventorying the items found. Smith could not recall what items were listed on the form, so defense counsel provided him the completed form to refresh his recollection. The form was not admitted into evidence, and there is no indication in the record that it was shown to the trial judge. According to Smith, the only item listed on the form was "registration," but Smith did not provide any details about that registration. Defense counsel asked Smith what the form listed for firearms, and Smith

responded, "It is marked no." Smith observed clothing in Turner's car, but it was not listed on the form. Smith explained that officers only document valuable items.

Defense counsel asked Smith if he would have let Turner drive away if no contraband had been found in the car, and Smith responded, "Um, probably not, to be quite honest." Smith said he still would have arrested Turner and towed the vehicle.

After the parties submitted on the evidence presented, the trial court indicated that it intended to deny the motion "on the basis that upon the defendant's arrest the officer is authorized to remove and seize the vehicle pursuant to [section] 23109.2, and regardless of the reasons it is within his discretion to do so. Once he's made that decision, it's reasonable for him to conduct an inventory search of the vehicle, in which the firearm was initially found." Both parties then presented further argument. After hearing argument, the court reiterated that the officer's reasons for impounding the vehicle were irrelevant because Smith had statutory authority to impound the vehicle.

## STANDARD OF REVIEW

In ruling on a motion to suppress evidence, the trial court "'is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable.'" (*People v. Tully* (2012) 54 Cal.4th 952, 979.) In reviewing the trial court's ruling, "'we defer to that court's factual findings, express or implied, if they are supported by substantial evidence.'" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232 (*Silveria*).) "'We exercise our independent judgment in

8

determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.'" (*Ibid.*)

DISCUSSION

Turner argues that the trial court erroneously denied his suppression motion on the ground that Smith "had ultimate authority and discretion to impound and inventory petitioner's vehicle." We agree.

The Fourth Amendment of the United States Constitution as made applicable to the states by the Fourteenth Amendment guarantees the right against unreasonable searches and seizures by the government. (*People v. Camacho* (2000) 23 Cal.4th 824, 829.) We presume that a search conducted without a warrant is illegal. (*Williams*, *supra*, 145 Cal.App.4th at p. 761.) "When a defendant raises a challenge to the legality of a warrantless search or seizure, the People are obligated to produce proof sufficient to show, by a preponderance of the evidence, that the search fell within one of the recognized exceptions to the warrant requirement." (*People v. Romeo* (2015) 240 Cal.App.4th 931, 939.)

One exception to the warrant requirement is an inventory search. (*Colorado v. Bertine* (1987) 479 U.S. 367, 371 (*Bertine*).) Inventory searches are permissible when law enforcement impounds or otherwise lawfully takes custody of a vehicle. (*South Dakota v. Opperman* (1976) 428 U.S. 364, 368-369.) Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."

9

(*Bertine*, *supra*, at p. 372.) The search must be carried out "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." (*Id.* at p. 375; *Florida v. Wells* (1990) 485 U.S. 1, 4-5; *People v. Evans* (2011) 200 Cal.App.4th 735, 743, fn. 5.)

In determining "whether a warrantless search is properly characterized as an inventory search, 'we focus on the purpose of the impound rather than the purpose of the inventory.'" (*People v. Lee* (2019) 40 Cal.App.5th 853, 867 (*Lee*).) We ask whether under the totality of circumstances the decision to impound the vehicle was reasonable. (*People v. Duong* (2020) 10 Cal.5th 36, 52.) The prosecutor carries the burden of establishing that impounding the vehicle was reasonable. (*Williams*, *supra*, 145 Cal.App.4th at p. 762.) In evaluating the lawfulness of an inventory search, we evaluate "both the objective reasonableness of the impound decision and the subjective intent of the impounding officer to determine whether the decision to impound was 'motivated by an improper investigatory purpose.'" (*Lee*, *supra*, at p. 867; *People v. Torres* (2010) 188 Cal.App.4th 775, 790 (*Torres*); *Whren v. United States* (1996) 517 U.S. 806, 812; see also *Bertine*, *supra*, 479 U.S. at p. 372.)

Even though a statute grants law enforcement officers authority to impound a vehicle, "statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure." (*Williams*, *supra*, 145 Cal.App.4th at p. 762; *Torres*, *supra*, 188 Cal.App.4th at p. 790; see also *Sibron v. New York* (1968) 392 U.S. 40, 61.) To be reasonable, the law enforcement officer's decision to impound must serve a

10

community caretaking function, such as "when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism." (*Lee*, *supra*, 40 Cal.App.5th at p. 867.) "Also relevant to the caretaking inquiry is whether someone other than the defendant could remove the car to a safe location." (*Ibid.*) A law enforcement officer is not required to adopt the least intrusive measure in deciding to impound a vehicle. (*Bertine*, *supra*, 479 U.S. at p. 374; *Williams*, at p. 761.) But "the action taken must nonetheless be reasonable in light of the justification for the impound and inventory exception to the search warrant requirement." (*Williams*, at pp. 761-762.) When the impound decision is not reasonable, the resulting inventory search also is not reasonable. (*Id.* at p. 761.)

Applying those principles, we agree with Turner that the trial court committed legal error by concluding that the inventory search was reasonable solely because section 23109.2(a)(1) authorized law enforcement to impound the car. (*Williams*, *supra*, 145 Cal.App.4th at p. 762; *Torres*, *supra*, 188 Cal.App.4th at p. 790.) The People concede the point (as they did in the trial court) and "agree that, even if statutorily authorized to impound upon an arrest for reckless driving, law enforcement should also consider the community caretaking function when exercising the discretion to impound a vehicle."

In determining whether the prosecutor carried its burden of establishing that the inventory search was reasonable, the trial court was required to determine whether under the totality of the circumstances Smith's decision to exercise his statutory discretion to tow the car was reasonable because it served a community caretaking function and was

11

not a ruse to discover evidence of criminality. (See *Lee*, *supra*, 40 Cal.App.5th at pp. 867-868; *Williams*, *supra*, 145 Cal.App.4th at pp. 762-763.) The People argued below that in addition to being statutorily authorized the decision to impound served a community caretaking function, rendering the inventory search reasonable under the Fourth Amendment. The trial court nevertheless failed to engage in the requisite analysis and instead erroneously concluded that Smith's reasons for impounding were irrelevant. By failing to analyze the reasonableness of the impound decision, the trial court failed to make any express or implied factual findings or to assess the credibility or legal sufficiency of Smith's explanation for why he decided to impound. Smith's credibility is particularly relevant because we must take into account Smith's subjective intent when he made the decision. (*Lee*, at p. 867.)

In light of the trial court's failure to assess the reasonableness of the decision to impound, we cannot independently judge whether "on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*Silveria*, *supra*, 10 Cal.5th at p. 232.) We therefore remand the matter to the trial court to conduct further proceedings because "although the basis relied upon by the trial judge did not permit the challenged evidence to be admitted consistent with the requirements of the Fourth Amendment," there was an additional ground before the trial court—namely, that the statutorily authorized inventory search was both objectively and subjectively reasonable—that has not been evaluated and that could "have permitted the motion to suppress to be denied."

12

(*People v. LeBlanc* (1997) 60 Cal.App.4th 157, 168; see also *People v Brooks* (1980) 26 Cal.3d 471, 483.)

DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Turner's motion to suppress and to conduct further proceedings on the motion consistent with this opinion.

Turner shall prepare the peremptory writ of mandate, have the peremptory writ of mandate issued, serve copies on all of the parties, and file the original with the clerk of this court, together with proof of service on all parties.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____
J.


We concur:

MILLER_____
                Acting P. J.
FIELDS_____
                J.